IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:    4:07cr71/RS
                                                     4:10cv567/RS/EMT

CHARLES S. FARIS, III

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct
sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law (docs. 106, 107).  The
Government has filed a response (doc. 115) and Defendant has filed an amended reply (doc. 123).
Defendant has also filed a Notice of Supplemental Authority (doc. 110).  The case was referred to
the undersigned for the issuance of all preliminary orders and any recommendations to the district
court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and
Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the
opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing
and that the § 2255 motion should be granted in part and denied in part, as explained herein.  *See*
Rules Governing Section 2255 Cases 8(a) and (b),

## PROCEDURAL BACKGROUND

Defendant was charged via a criminal complaint on October 7, 2007, with knowingly
attempting to persuade, induce, entice and coerce an individual under the age of eighteen to engage
in sexual activity in violation of 18 U.S.C. § 2422(b) (doc. 1).  He was arrested, and the office of the
Federal Public Defender was appointed to represent him (doc. 8).  Counsel William R. Clark, Jr.,
of that office, filed a "Motion for Mental Examination [of Defendant] and Notice of Defense of
Insanity" (doc. 13), and Defendant was ordered committed for a psychiatric evaluation (doc. 14).
While the result of the psychiatric evaluation was pending, Defendant was indicted on November

8, 2007, and charged with two identical counts of knowingly attempting to persuade, induce, entice and coerce an individual under the age of eighteen to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (doc. 19).  The court received the psychiatric report on January 10, 2008, and it was filed under seal (doc. 21).  The district court entered an "Order of Competency" without a hearing (doc. 22).  On the same date, Defendant was arraigned and Federal Public Defender Randolph P. Murrell was substituted as counsel for Defendant (doc. 24).

Trial was set for February 19, 2008, but it was continued twice, once at the request of each party (docs. 23, 26, 27, 30, 31).  The defense "Motion for Defendant to Act as Co-Counsel," the goal of which was to allow Defendant to present part of the opening statement and closing argument without having to testify, was denied (docs. 28, 32, 37).  A superseding indictment was entered, adding as count three a charge of possession of child pornography in violation of §§ 2252A(a)(5)(B) and 2252A(b)(2) (doc. 33), and the court granted two additional defense motions to continue (docs. 38–41).

Defendant entered a plea of guilty to count three (docs. 45–48, 50), but proceeded to trial on the original two counts and was found guilty of those counts as charged (doc. 66).  He filed a motion for judgment of acquittal, which was denied (doc. 60, 69).[1]

The probation office prepared a Pre-Sentence Investigation Report ("PSR").  Counts one and two were scored as separate offenses (PSR ¶ 22).  For each of these counts, Defendant's base offense level was 24 (PSR ¶¶ 24, 35).  Several upward adjustments were applied.  Specifically, two levels were added pursuant to  § 2G1.3(b)(2)(B), due to "undue influence" (PSR ¶¶ 25, 36).  Another two-level upward adjustment was applied pursuant to § 2G1.3(b)(3)(B), due to Defendant's use of a computer to commit the offense (PSR ¶¶ 26, 37).  Further, because the purported victims were under the age of twelve, another eight-level upward adjustment was applied pursuant to § 2G1.3(b)(5) (PSR ¶¶ 27, 38).  Finally, Defendant received a two-level adjustment for obstruction of justice due

---

[1] In support of his motion, Defendant argued that his actions, construed in the light most favorable to the Government, were wholly intrastate non-economic activity that was not within the scope of the Commerce Clause (doc. 60 at 2).  The court found that Defendant's argument was foreclosed by United States v. Evans, 476 F.3d 1176, 1180–81 (11th Cir. 2007), and denied the motion (doc. 69 at 1).

to his "materially false testimony during the trial" (PSR ¶¶ 30, 41). The adjusted offense level for each count was 38, and after the application of the multiple-count adjustment in § 3D1.4, Defendant's combined adjusted offense level was 40 (PSR ¶¶ 43–48). He had no criminal history points, and thus his criminal history category was I (PSR ¶ 54). The minimum term of imprisonment on counts one and two was ten years with a maximum term of life, and the maximum term of imprisonment on count three was ten years (PSR ¶ 74). The applicable guidelines range was 292 to 365 months (PSR ¶ 75).

The only objection relevant to Defendant's actual sentence was an objection to the adjustment pursuant to § 2G1.3(b)(2)(B), for unduly influencing a minor to engage in prohibited sexual conduct (PSR ¶ 96; doc. 85 at 2–4). Defendant argued that there was no "undue" influence, in large part because the only contact was with the mother of the fictitious children but also because he did not use "superior resources" to facilitate the encounter (doc. 85 at 2–4). The objection was overruled (*id*. at 7–10). After hearing arguments from the parties, the court sentenced Defendant to a term of 292-months imprisonment on counts one and two, with the terms to run concurrently, and a term of 120-months imprisonment on count three, also to run concurrently with the other terms, followed by a 25-year term of supervised release (docs. 75, 76, 85 at 27–28).

Defendant appealed, represented by Chet Kaufman of the Office of the Federal Public Defender. On appeal he contended that the district court erred by denying his motion for judgment of acquittal and by applying the two-level "undue influence" enhancement under U.S.S.G. § 2G1.3(b)(2)(B) (doc. 98 at 5). The Eleventh Circuit found no error and affirmed Defendant's conviction and sentence on September 23, 2009 (*id*. at 8, 13; United States v. Faris, 583 F.3d 756 (11th Cir. 2009)). In so doing, the court noted that a proposed amendment to the U.S. Sentencing Guidelines, Amendment 7, would affect the application of the undue influence enhancement by providing that the enhancement would not apply if the "minor" is an undercover law enforcement officer (doc. 98 at 12–13).[2] The court also noted that the proposed amendment had no legal force

_____

[2] As discussed *infra*, the proposed amendment was later adopted and is now known as Amendment 732. Thus, hereafter, the amendment will be referred to as Amendment 732, although it is cited in the Eleventh Circuit's opinion as Amendment 7 (doc. 98 at 12–13; Faris, 583 F.3d at 761).

unless Congress adopted it, and thus the court followed its own precedent, <u>United States v. Root</u>, 296 F.3d 1222, 1233 (11th Cir. 2002), in holding that application of the enhancement was proper (doc. 98 at 13). Defendant did not petition for review en banc, and the mandate issued on October 22, 2009 (doc. 98 at 1).

Defendant then filed an unopposed renewed request for appointment of counsel "for the purpose of filing a well-founded motion for post-conviction relief under 28 U.S.C. § 2255" (doc. 103).[3] The motion was granted, and CJA Attorney Michael Robert Ufferman was appointed to represent Defendant in his request for post-conviction relief (docs. 104, 105). The instant motion to vacate was timely filed by Mr. Ufferman on Defendant's behalf on December 22, 2010 (doc. 106).

Defendant raises seven grounds for relief in his motion, five of which allege ineffective assistance of trial or appellate counsel and two of which rely on Amendment 732 to the United States Sentencing Guidelines. The Government opposes the motion in its entirety.

**STATEMENT OF FACTS**

Defendant's arrest came about as a result of a joint task force "sting" operation in Tallahassee, Florida, designed to identify individuals who used the internet to persuade, induce, entice and coerce minors to engage in sexual activity (PSR ¶ 9). On October 4, 2007, in an America On Line ("AOL") chat room called "Open Minded Parents," Defendant, using the screen name "DpravdCravings," began communicating with "StephiTa8," who was actually an investigator with the Tallahassee Police Department posing as a single mother of seven and eleven year old daughters (PSR ¶ 10). Defendant initiated conversation by saying "Hello Stephanie, Chase, 53, Tallahassee. Just passing thru or do you have 'open-minded' fam fun, yng interest?" (doc. 89 at 35). StephiTa8 responded that she was open-minded (<i>id.</i>). When Defendant learned that StephiTa8 had daughters and the ages of those fictitious daughters, he wrote "Oh God, what sweet luscious ages . . . all sorts and kinds of new lil curiosities and wondering and yearnings to be explored" (PSR ¶ 11). When asked what his interests were, he said that his limits were few, and he did not think that his interests were unusual but remarked "I don't try to deny them to myself" (doc. 89 at 37). He also said his

---

[3] Defendant's original motion to appoint counsel was withdrawn pending his motion to recall the mandate (docs. 100–102).

interests included "yng girls and boys. . . bestiality. . . golden play . . . watching, sharing. . . its all erotic . . . ." (*id.*).  When the investigator asked if he had found many willing parties in Tallahassee, he said "only a couple over the years" (doc. 89 at 39).  The conversation included other small talk, and lasted just less than one hour (*id.*).

In the second chat, Defendant stated "I think it is in BOTH our best interest right now that we each understand much of what the other may say about certain things is fantasy, imaginings, hypothetical 'what ifs' . . . make sense?" (doc. 89 at 41).  StephiTa8 replied "I thought we were past that, if you are not serious . . .," and  Defendant immediately replied "LMAO [laughing my ass off], I'm serious just cautious . . . but that's fine if you think being careful means not being serious" (*id.*).  Defendant then asked the names of the young girls and whether either of them had been with a man (*id.* at 42).  When StephiTa8 responded that she had "had a couple of special friends," Defendant asked "where do I apply . . . to interview as a special friend?" (*id.*).  Defendant later asked whether the girls had been with anyone as old as him (*id.* at 43).  He told StephiTa8 that his "youngest" was "nine, but no penetration with her, tho," and he clarified that this was his choice because he would not penetrate until the child was "ready and anxious and able" (*id.* at 43–44).  Defendant explicitly and repeatedly expressed his interest in having sex with the two girls, and at one point stated he wanted "all four of us to be beyond caring, beyond redemption, lost in a sea of mad pleasures, each building on the last, always needing the next," and he went on to state "I want you to watch as I take my time and slowly take Ginnie [the fictitious eleven year old] to an orgasm" (*id.* at 44–48).  When StephiTa8 asked what they were going to do about that, Defendant said "I think we need to talk on the phone, the first step towards reality" (*id.* at 48).  StephiTa8 asked for Defendant's telephone number, and he provided it (*id.*).  Before concluding the online chat, Defendant suggested that they meet at Publix, and stated "If we meet and if either of us is not 100 percent sure and comfortable, no harm done" (*id.* at 50).

The officer called Defendant, still in character as StephiTa8 (doc. 89 at 50).[4]  During their first conversation Defendant said "They are your girls.  Basically, what you say goes." (*id.* at 52).  Defendant indicated that he wanted things to be natural, wanted the four of them to spend time

---

[4] The conversations were recorded on a CD and played for the jury.

together, then everything else would come more naturally (*id*. at 52–53). StephiTa8 indicated that she did not want the girls to get "too attached" because she did not know how long Defendant would be around, so there did not need to be a lot of hanging out, to which Defendant responded that he could "go either way, any way. It's up to you" (*id*. at 53). StephiTa8 suggested that they meet that night, and Defendant agreed (*id*). Defendant mentioned wanting to be careful because "there's so many of these shows out there where they trap, and the guys didn't do anything wrong" (*id.* at 54). StephiTa8 asked Defendant about the size of his penis, and Defendant responded that he was pretty average, adding "I hope that's not too small for them" (*id*. at 54–55). He then stated that if size were an issue, "there's a thousand, million other things that we can do" (*id*. at 55). Defendant further described his penis, and he inquired about condoms (*id*.). StephiTa8 responded "if you are going to have sex with my seven and eleven year old, I require condoms" (*id*.). Defendant said that was not something he liked but it was StephiTa8's choice because they were her girls (*id*. at 55–56). Defendant further indicated that he thought sexual activity involving family was "pretty natural for men [and that there are] cultures where this isn't frowned on and back in time it was accepted behavior" (*id*. at 56).

Defendant sent StephiTa8 an email later that night in which he stated "can hardly wait, been such a long time since the last. Thank you for your interest and trust . . . ." (doc. 89 at 58). The following day, StephiTa8 called Defendant and left a message suggesting that they get together that evening (*id*. at 59). Defendant responded via instant message that it would be "delicious" and that there was no problem with the short notice (*id*. at 60).

StephiTa8 called Defendant again, at his request, when he was on his way to the home where they would meet, purportedly her home (doc. 89 at 62). During that conversation Defendant asked "are they [the girls] there now?" and when he was told that they were not, he said "Oh, I was going to say hi" (*id*.). He also asked if they were excited (*id*). Defendant arrived at the home bearing wine and two bouquets of flowers which he presented by stating "wine for mom, and flowers for the girls" (*id*. at 63, 64). Defendant was arrested after he entered the house (*id*. at 65). Law enforcement officers searched him incident to arrest and discovered three condoms and a half pill of suspected Viagra (PSR ¶14).

Police executed a search warrant at Defendant's apartment and recovered a computer that contained at least twenty images of child pornography (PSR ¶ 15). These images formed the basis for the charges contained in count three of the superseding indictment (doc. 33).

**LEGAL ANALYSIS**

General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 F. App'x 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255

motion and will be considered procedurally barred. <u>Lynn</u>, 365 F.3d at 1234–35; <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998); <u>McKay v. United States</u>, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "available on direct appeal when "its merits can be reviewed without further factual development." <u>Lynn</u>, 365 F.3d at 1232 n.14; <u>Mills v. United States</u>, 36 F.3d at 1055. Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." <u>Lynn</u>, 365 F.3d at 1234; <u>Bousley</u>, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." <u>Lynn</u>, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* <u>Nyhuis</u>, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. <u>Massaro v. United States</u>, 538 U.S. 500, 503 (2003); *see also* <u>United States v. Patterson</u>, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.,* 466 U.S. at 686; <u>Williams v. Taylor</u>, 529 U.S. 362, 390 (2000); <u>Gaskin v. Secretary, Dept. of Corrections</u>, 494 F.3d 997, 1002 (11th Cir. 2007). In applying <u>Strickland</u>, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688; *see also* <u>Dingle v. Secretary for Dept. of Corrections</u>, 480 F.3d 1092, 1099 (11th Cir. 2007). "[R]eviewing courts must indulge a strong presumption that counsel's

conduct fell within the wide range of reasonably professional assistance." Yordan, 909 F.2d at 477 (citing Harich v. Dugger, 844 F.2d 1464, 1469 (11th Cir. 1988); Dingle, 480 F.3d at 1099; Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315 (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)); <u>United States v. Ross</u>, 147 F. App'x 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* <u>Chandler v. McDonough</u>, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing <u>Drew v. Dept. of Corrections</u>, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); <u>Hill v. Moore,</u> 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); <u>Ferguson v. United States</u>, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004); <u>Tejada</u>, 941 F.2d at 1559; <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. <u>Lynn</u>, 365 F.3d at 1239.

<u>Ground One—Retroactive Application of U.S.S.G. Amendment 732</u>

Defendant's offense level was adjusted two levels pursuant to § 2G1.3(b)(2)(B) of the United States Sentencing Guidelines, which provides for such an increase if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct" (PSR ¶¶ 25, 36). Amendment 732 to the Guidelines, which became effective November 1, 2009, added a comment to Application Note 3(B) of § 2G1.3. The new comment provides that subsection (b)(2)(B) "does not apply in a case in which the only 'minor' (as defined in Application Note 1) involved in the offense is an undercover law enforcement officer." *See* U.S.S.G. Amendment 732. Defendant contends that this amendment applies retroactively to his case and that he is entitled to re-sentencing.

The Eleventh Circuit specifically held in <u>United States v. Jerchower</u>, 631 F.3d 1181 (11th Cir. 2011), that Amendment 732 was a clarifying amendment, rather than a substantive amendment. *Id.* at 1183, 1184. Clarifying amendments do not represent substantive changes in the Guidelines, but rather "provide persuasive evidence of how the Sentencing Commission originally envisioned application of the relevant guideline." *Id*. at 1184. Because of this, clarifying amendments generally, and Amendment 732 in particular, apply retroactively to cases on direct appeal. *Id.*; *see also* <u>United States v. Christensen</u>, 598 F.3d 1201 (9th Cir. 2010) (same). Although no court has addressed the specific question of whether Amendment 732 applies to cases on collateral review, Defendant argues that Eleventh Circuit precedent dictates that it be so applied in his case.

The Eleventh Circuit has consistently held that an amendment that makes clarifying, as opposed to substantive changes, may be given retroactive application in post-conviction proceedings if a failure to do so constitutes a complete miscarriage of justice. *See* <u>Burke v. United States</u>, 152 F.3d 1329, 1331–32 (11th Cir. 1998) (citing <u>Grant v. United States</u>, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996); <u>United States v. Payne</u>, 99 F.3d 1273, 1281–82 (5th Cir. 1996) (holding that a district court's technical application of the guidelines is a non-constitutional issue that is not cognizable on collateral review absent a complete miscarriage of justice); <u>Graziano v. United States</u>, 83 F.3d 587, 589–90 (2d Cir. 1996) (holding that absent a complete miscarriage of justice, challenges to the application of the guidelines will not be considered on collateral review where the defendant failed to raise them on direct appeal); <u>Auman v. United States</u>, 67 F.3d 157, 161 (8th Cir. 1995) (holding that ordinary questions of guideline interpretation falling short of a

miscarriage of justice do not present a proper § 2255 claim); United States v. Schlesinger, 49 F.3d 483, 485–86 (9th Cir. 1994) (concluding that nonconstitutional sentencing errors that have not been raised on direct appeal generally may not be reviewed under § 2255 with the possible exception of errors not discoverable in time for direct appeal); United States v. Faubion, 19 F.3d 226, 232–33 (5th Cir. 1994) (holding that attack on the district court's upward departure from the guidelines is not cognizable in a § 2255 action absent a miscarriage of justice); Scott v. United States, 997 F.2d 340, 342–43 (7th Cir. 1993) (stating that petitioner could not raise, by means of § 2255, an allegation that the district court misapplied the sentencing guidelines where the sentence had become final, petitioner had not appealed, and the petitioner failed to demonstrate any extraordinary circumstances warranting collateral attack on his sentence)); *see also* United States v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003) ("clarifying amendments . . . may only be retroactively applied on direct appeal of a sentence or under a § 2255 motion," not on motions pursuant to § 3582(c)(2)); United States v. Meza, 351 F. App'x 396, 398 (11th Cir. 2009) (same).

The Government argues that the cases cited above do not mandate the retroactive application of a guidelines amendment, and that failure to apply Amendment 732 to Defendant's case would not result in a miscarriage of justice. The undersigned disagrees. The Government relies in great degree on Burke, which considered the application of Amendment 347 (an amendment that clarified § 3C1.1 to explain that post-offense flight and giving a false name ordinarily do not constitute obstruction of justice). Burke, 152 F.3d at 1331. The defendant in Burke pleaded guilty to six counts of armed bank robbery. 152 F.3d at 1330. He received a two-level enhancement for obstruction of justice because he fled following the offense and provided false identification when he was finally apprehended. 152 F.3d at 1330. Two years after he was sentenced, the Sentencing Commission enacted Amendment 347, thus negating the enhancement. *Id.* at 1331. Defendant Burke moved pursuant to § 2255 for modification and correction of his sentence based on the amendment. *Id.* The court found his claim was not cognizable on collateral review because it was neither constitutional nor jurisdictional and did not constitute a "fundamental defect resulting in a complete miscarriage of justice." *Id.* In so finding, the court considered all the circumstances and specifically noted that defendant had the opportunity to object to the obstruction-of-justice enhancement both at his original sentencing and on direct appeal, but failed to do so. *Id.* at 1332.

The case at bar is thus markedly distinguishable from <u>Burke</u>, in that Defendant raised his objection to the guideline adjustment both before the district court and on appeal.  In light of Defendant's consistent objection, as well as the retroactive applicability of Amendment 732, it is the opinion of the undersigned that condoning the error by failing to correct it would result in a complete miscarriage of justice.  <u>Lynn</u>, 365 F.3d at 1232–33.

The Government next argues that even if the issue is cognizable, Defendant cannot establish prejudice.  It notes that if removal of this two-level enhancement is the only adjustment to Defendant's sentence calculation, Defendant's sentence could potentially remain unchanged upon re-sentencing.  As noted above, Defendant's advisory guidelines range was 292 to 365 months, and he was sentenced at the bottom of this range to a term of 292 months.  With a revised offense level of 38 (down two levels from the original level of 40) and the same criminal history of I, Defendant's new advisory guidelines range would be 235 to 293 months.  Thus, Defendant's 292-month sentence falls within either the original or the adjusted guidelines range.  The Government thus argues that Defendant cannot prove prejudice because it is too speculative to assume that his sentence would have been shorter absent the application of this adjustment.  *See* <u>Cleckler v. United States</u>, 410 F. App'x 279, 284 (11th Cir. 2011).

In <u>Cleckler</u>, the defendant received a two-level adjustment for obstruction of justice due to what the district court found to be his perjured testimony at trial.  410 F. App'x at 280.  He objected to the enhancement at sentencing, but the objection was overruled.  *Id.*  He also challenged the enhancement on direct appeal but was denied relief.  *Id.* at 281.  Cleckler then filed a § 2255 motion, wherein he claimed ineffective assistance of trial counsel regarding the enhancement, by arguing that counsel failed to advise him of the risks of testifying at trial, and had he been properly informed he would have chosen not to testify and would not have been subject to the obstruction enhancement.  *Id.* at 281.  In conducting the two-part <u>Strickland</u> analysis, the reviewing magistrate judge found that although defendant's 33-month sentence fell at the low end of the advisory guidelines range of 33 to 41 months <u>with</u> the obstruction of justice enhancement, it still fell within the 27 to 33 month advisory guidelines range that would have applied <u>without</u> the obstruction enhancement.  *Id.* at 282.  Thus, defendant failed to show a "reasonable probability" that had he been warned of the possible obstruction enhancement, his sentence would have been different.  *Id.*  The

district court adopted the recommendation, again noting that defendant's claim that his sentence would have been shorter without the obstruction of justice adjustment was speculative, given the advisory nature of the guidelines. *Id.* The Eleventh Circuit found that defendant failed to show prejudice. It relied on the language of the report and recommendation and the district court's adoption thereof, noting that the same judge who imposed sentence also ruled on the report and recommendation. *Id.* at 284. The court stated "[g]iven the particular circumstances here, [defendant's] speculation is not enough to carry his burden to show a reasonable probability of a different sentence." *Id.* Although the same sort of speculation is present in Defendant's case, the court finds the case at bar to be distinguishable from <u>Cleckler</u>. First, the defendant's claim in <u>Cleckler</u> rested on an allegation of ineffective assistance of counsel, and thus his claim was analyzed under the two-pronged <u>Strickland</u> standard, which required a showing of prejudice. Second, the district judge who will rule on this report and recommendation is <u>not</u> the same judge who imposed sentence (*see* doc. 125), as was the case in <u>Cleckler</u>. Third, the speculation present in <u>Cleckler</u> is more tenuous than that here, as Cleckler's claim was based in part on the subjective argument that he would not have testified had his counsel adequately discussed the obstruction enhancement with him, rather than a guidelines clarification that is not subject to interpretation.

At Defendant's sentencing, the court noted that the sentence it imposed was at the bottom of the applicable guidelines range and specifically stated: " I recognize that the guidelines are not binding up on me, and I've tailored the sentence to take into account the facts and circumstances surrounding this particular case" (doc. 85 at 27). This language does not suggest that the court felt constrained by the guidelines, but the court was certainly aware of its obligation to consider the advisory range. It may have been a mere coincidence that Defendant's sentence fell at the bottom of the advisory guidelines range, but it may not have been. Similarly, Defendant might have received the same sentence if the guidelines range had been lower, or he might not have. Clearly, though, the advisory range is of utmost importance and relevance in determining an appropriate sentence, as it is the starting point for any sentencing decision. *See* <u>Rita v. United States</u>, 551 U.S. 338, 351 (2007) (stating that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range); <u>Gall v. United States</u>, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting

point and the initial benchmark."). The undersigned cannot determine what the sentence would have been had Defendant's guidelines range been lower initially, or what it will be if he is re-sentenced under a revised guidelines range.  However, it is noteworthy that the sentencing judge granted Defendant's motion for the appointment of counsel to assist him in pursuing the instant § 2255 motion and raising this very claim (*see* docs. 103, 104).[5]

Even a minimal amount of additional time in prison is harmful.  *See* <u>Glover</u>, 531 U.S. at 203. Under a mandatory guidelines regime, it would be a miscarriage of justice for a district court not to reconsider a sentence after revision of the applicable guidelines range.  *See* <u>United States v. Knight</u>, 266 F.3d 203 (3rd Cir. 2001) (remanding for re-sentencing where district court applied an incorrect sentencing range, despite the fact that the sentence fell within the correct guideline range); <u>United States v. Plaza-Garcia</u>, 914 F.2d 345, 347 (1st Cir. 1990) (remanding for re-sentencing because district court may have been influenced by a guidelines range that was based on two erroneous calculations);  <u>United States v. Cabral-Castillo</u>, 35 F.3d 182, 189 (5th Cir.1994) (finding prejudice under a plain error analysis because the imposed "sentence may well have been affected by the district court's error, particularly in light of the district court's willingness to impose the lowest sentence within the incorrect sentencing guidelines range"); *but see* <u>United States v. Mitchell</u>, Nos. Cr. A. 98-60-JJF, Civ. A. 99-687-JJF,  2001 WL 708808, at *2 (D. Del. Jun. 20, 2001) (sentence at low end of erroneously calculated guidelines range was within accurate range and thus defendant failed to establish that error in criminal history score was a complete miscarriage of justice).  It is true that Defendant's case was decided under the advisory guidelines regime.  It is also true that he has not pointed to anything definitive in the record to support his suggestion that there is a reasonable probability that he would receive a lesser sentence under the revised advisory guidelines range after the application of Amendment 732.  *See* <u>Potts v. United States</u>, 566 F. Supp. 2d 525, 541, 544 (N.D. Tex. 2008) (identifying possible indications that defendant would receive a lesser sentence upon re-sentencing, after finding counsel was constitutionally ineffective for failing to

---

[5] The sentencing judge's appointment of counsel may have no bearing on the issue. However, given that the appointment of counsel is a rare occurrence in § 2255 proceedings in this district, it is not unreasonable to infer that the sentencing judge appointed counsel to pursue a claim he viewed as potentially meritorious.

object to error in guidelines calculation). However, because this claim was not raised as an ineffective assistance of counsel claim, Defendant is not required to show prejudice, only that a miscarriage of justice would result under the circumstances of this case if the district court does not reconsider his sentence under the newly calculated guidelines range. Only the district court can determine whether, in light of an amended guidelines range, the same sentence should be imposed. *See* United States v. Paladino, 401 F.3d 471, 483–84 (7th Cir. 2005) ("the only practical way . . . [to determine whether error occurred] is to ask the district judge"). Defendant ought to be entitled to this consideration under the circumstances of this case.[6] Therefore, to the extent that the district court should be afforded the opportunity to reconsider his sentence, Defendant is entitled to relief.

Ground Two—Failure to object to obstruction of justice enhancement

Defendant received a two-level enhancement for obstruction of justice pursuant to U.S.S.G. Section 3C1.1 (PSR ¶¶ 30, 41). Application of the enhancement was based upon Defendant's testimony at trial that he intended to have sex only with the purported mother, not the two minor children (PSR ¶ 18). Defendant did not object to this adjustment at the time, but he now contends that counsel was constitutionally ineffective for his failure to do so.

Defendant points to the commentary to § 3C1.1 which provides that this provision is "not intended to punish a defendant for the exercise of a constitutional right," U.S.S.G. § 3C1.1, comment (n.2), that is, the right to enter a not guilty plea and the right to testify. The right to testify, of course, does not include a right to commit perjury. United States v. Dunnigan, 507 U.S. 87, 96 (1993) (citing cases). Defendant argues, citing a Seventh Circuit case, that "an obstruction enhancement is not warranted merely because the jury did not believe the defendant's testimony; the enhancement should only be applied if the court determines that the defendant committed perjury." United States v. Johnson, 612 F. 3d 889, 895 (7th Cir. 2010). If a defendant challenges a sentence increase based on allegedly perjured testimony, the trial court must make findings to establish a willful impediment to or obstruction of justice which will support all the elements of a perjury violation in a specific

---

[6] As can be seen *supra*, the low end of Defendant's revised range, 235 months, is fifty-seven months below the low end of the range at sentencing and the actual sentence that was imposed, 292 months (in Cleckler, the difference was only six months).

case. <u>Dunnigan</u>, 507 U.S. at 95–97. Defendant now claims that counsel was ineffective because had he made such an objection, the district court could not have made findings that would have supported the enhancement.

Defendant was charged in counts one and two with violations of title 18 U.S.C. § 2422(b) (doc. 19). "The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself." <u>United States v. Murrell</u>, 368 F.3d 1283, 1286 (11th Cir. 2004); <u>United States v. Yost</u>, 479 F.3d 815, 819 n.3 (11th Cir. 2007) (citing <u>Murrell</u>). Thus, the Government must prove "that the defendant intended to cause assent on the part of the minor, not that he 'acted with the specific intent to engage in sexual activity.'" <u>United States v. Lee</u>, 603 F.3d 904, 914 (11th Cir. 2010) (citing <u>Yost</u>, 479 F.3d at 819 n.3; *see also* <u>United States v. Pierson</u>, 544 F.3d 933, 939 (8th Cir. 2008); <u>United States v. Dwinells</u>, 508 F.3d 63, 71–72 (1st Cir. 2007); <u>United States v. Thomas</u>, 410 F.3d 1235, 1244 (10th Cir. 2005); <u>United States v. Bailey</u>, 228 F.3d 637, 639 (6th Cir. 2000)); <u>Murrell</u>, 368 F.3d at 1286; <u>United States v. Hofus</u>, 598 F.3d 1171, 1178 (9th Cir. 2010); <u>United States v. Brand</u>, 467 F.3d 179, 202 (2d Cir. 2006). The Government must prove that a defendant took a "substantial step toward causing assent, not toward causing actual sexual contact." <u>Lee</u>, 603 F.3d at 914 (citations omitted). The Sixth Circuit noted in <u>Bailey</u> that it is "rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion," but that those are two clearly separate and different intents. 228 F.3d at 639.

Defendant now argues that, even accepting for sake of argument that the testimony identified by the probation officer in the PSR—that is, that Defendant did not intend to have sexual relations with the children in this case—was false (which he does not concede), his testimony was not "materially false," because his intent with respect to the actual sexual contact is irrelevant to a finding of guilt under the statute (doc. 123 at 4–5).

The jury instructions in this case contained the following language:

Also, it is *not* necessary for the Government to prove that the individual was actually persuaded or induced or enticed to engage in sexual activity; but it *is* necessary for the Government to prove that the Defendant intended to engage in some form of unlawful sexual activity with the individual and knowingly took some action that was a substantial step toward bringing about or engaging in that sexual activity.

(Doc. 70 at 5). Therefore, the jury's rejection of Defendant's testimony regarding his sexual intent, which was implicit in its verdict, was material to his conviction in this case. Furthermore, although the court's comment was not made in response to Defendant's specific objection, the court also made clear that it did not believe Defendant's testimony, stating that it had no question that "if there had been a real mother and a real child, these acts would have been carried out by this defendant, and the only reason they were not was because it was a police sting operation" (doc. 85 at 26).

Counsel stated in his affidavit in response to Defendant's motion that he did not object to the § 3C1.1 enhancement because, given the verdict, there was a basis for the court to conclude that Defendant had testified falsely at trial, and such a finding supported the enhancement. Counsel is not constitutionally ineffective for his failure to make a meritless objection. Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *see also* Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002). Given the court's comment indicating its opinion of Defendant's testimony, such an objection would have been meritless, and thus Defendant has not shown constitutionally ineffective counsel or his entitlement to relief on this ground.

Ground Three—Failure to Present Testimony at Trial

Defendant contends that trial counsel was constitutionally ineffective because he failed to present the testimony of two women who would have supported Defendant's theory of defense at trial. Specifically, Defendant asserts that the women could have testified that Defendant met women online and engaged in "fantasy" discussions involving children, but that when he met the women in person, they engaged in consensual adult sexual relationships with no attempt by Defendant to involve children in the sexual relationship. Alternatively, he argues that if counsel had a valid reason for not presenting the women as trial witnesses, counsel should not have mentioned them to the jury, because by doing so he aroused the jury's suspicions about the reason for their absence.

Counsel stated in his opening statement:

Now, he'll tell you that it turns out that he actually met about five of these women [that Defendant had met via the internet], met them not because they were trying to build a relationship, but for sex. We tracked down some of those women. We'll tell you something about that. But these were all adult women and this was all fantasy.

(Doc. 89 at 25). None of these women testified at trial, nor had they been expected to do so. During pre-trial discussions with the court, the defense indicated that the only two witnesses it would call, other than Defendant, were Defendant's friend of thirty years, Virginia Gwynn, and investigator Patricia Gallo from the Federal Public Defender's office (*id.* at 9).

Defendant testified at trial that he had talked with "thousands" of women on the internet, mainly about sex (doc. 90 at 29), and that he had met about five women through the chat rooms and perhaps a dozen women from the internet altogether (*id.* at 29–30). He explained that most of the time, one could not believe what was being said in the chat rooms, and that it was "fantasy" or "role play" (*id.* at 31). Defendant admitted that he found the idea of talking about sex with children to be erotic and that he had downloaded child pornography (*id.* at 33). He agreed that objectively, from the contents of his chats with StephiTa8 one would get the impression that he actually wanted to have sex with children, but he vehemently denied any intent to act out on this and insisted it was purely fantasy (*id.* at 33, 34). He explained that he believed that the conversation would lead to sex with the "mother" because this is what had happened in other situations when he had met women in that sort of chat room; neither person ended up being comfortable with or interested in pursuing the fantasy once they were together in person (*id.* at 36–37, 40). Defendant also testified on both direct and re-direct examination that he never believed the children really existed, and it was not his intention to persuade or coerce them into having sex with him (*id.* at 37, 57). On cross-examination, Defendant maintained that comments made during the chat were all part of the role-play (*id.* at 39–40). He reiterated that although he had talked about sex with children in his chats with the five women he met via the chat rooms, and that he found child pornography to be erotic, based on past experience his hope was that he would have sex with the adult "mother" when they met (*id.* at 40, 54–55).

Ms. Gallo testified that she had located "two women who were possibly associated with [Defendant]" through information provided by Defendant (doc. 90 at 59). Ms. Gallo testified that she had met one of the women in Madison County, and spoken to another in Coral Gables on the phone, and thus confirmed that they were adult women (*id.* at 60–61). She did not explain anything further about the women or the circumstances surrounding any interaction they may have had with

Defendant because of hearsay concerns.  Counsel mentioned the confirmation of the existence of the adult women only in passing during his closing (doc. 90 at 81).

Defendant now contends that counsel was constitutionally ineffective for his failure to present the testimony of the two women to support his theory of defense.  He claims that the women could have each testified that they engaged with Defendant in fantasy discussions involving children, but ultimately had consensual adult sex during which Defendant made no attempt to involve any children.  Defendant speculates that because this testimony was not presented after counsel mentioned the women in his opening statement, the jurors assumed that the women's testimony would have been damaging to him, and he states that "in the jurors' minds—without any other explanation, this was the only plausible reason why the women were not presented as witnesses by the defense" (doc. 107 at 10–11).  This assertion is unpersuasive.  Counsel did not promise that the women would testify; he only told the jury that the defense would "tell you something about" the fact that two of the women had been located (doc. 89 at 25).  This situation is thus factually distinguishable from the case relied upon by Defendant, in which the First Circuit found that an attorney's failure to fulfill a promise to present testimony of a psychologist and a psychiatrist about the defendant's mental state at the time of a murder was constitutionally ineffective.  <u>Anderson v. Butler</u>, 858 F.2d 16, 18 (1st Cir. 1988).  In <u>Anderson</u>, the court stated:

> [L]ittle is more damaging than to fail to produce important evidence that had been promised in any opening.  This would seem particularly so here when the opening was only the day before, and jurors had been asked on the voir dire as to their acceptance of psychiatric testimony.  <u>The promise was dramatic, and the indicated testimony strikingly significant</u>.  The first thing that the ultimately disappointed jurors would believe, in the absence of some other explanation, would be that the doctors were unwilling, viz., unable, to live up to their billing.  This they would not forget.

<u>Anderson</u>, 858 F.2d at 17 (emphasis added).  Here, in addition to the fact that there was no "promise" that the women would testify, counsel states in his affidavit that:

> It was my view that the testimony of the women would not have helped and would probably have been damaging to [Defendant].  While the one witness did mention [Defendant's] efforts at role playing, I thought the role playing may have been seen by the jury as supporting the Government's claims that he intended to have a sexual encounter with the fictitious children that were the subject of the indictment.  Both women were most unsympathetic to Mr. Faris, and it was my view that their

> antagonism and their humiliation at being called as witnesses would have been more damaging than helpful. [Defendant] and I discussed the possibility of calling the two women as witnesses, and [Defendant] agreed that more harm than good would come from their testimony.

(Doc. 115-1 at 1–2). Defendant does not deny or even address counsel's description of his participation in the decision not to call the women as witnesses at trial.

Defendant contends that if counsel knew he did not intend to present the testimony of the two women as trial witnesses, he should not have mentioned them during his opening statement and he should not have presented Ms. Gallo's testimony. Counsel again offers a strategic reason for presenting the limited testimony of Ms. Gallo. He indicates that he thought that presenting Ms. Gallo's testimony confirming that Defendant had met two adult women in the past would support Defendant's testimony (doc. 115-1 at 2). In his reply Defendant again speculates that the jurors likely assumed that not only would the women not support Defendant's theory, but that they would refute Defendant's theory or provide further damaging testimony. While this is possible, Defendant has offered no evidence, much less proof, that this is correct. The situation was sensitive and embarrassing for Defendant, but his liberty was at stake and thus he had an interest in taking a risk and putting his private life on display. The jurors could have just as easily concluded that the women were unwilling to subject their private lives to the same sort of scrutiny for someone who was apparently nearly a stranger to them. In his response, Defendant notes that a representative from post-conviction counsel's office had made contact with one of the women (doc. 123 at 5–6). She confirmed that she and Defendant met at a hotel room and "prior to and during the meeting the two engaged in role playing,"[7] and at no time did Defendant attempt to engage in any conduct with any child. The fact that she was willing to speak to post-conviction counsel years later is certainly not evidence that she would have been a willing or favorable witness at the time of Defendant's trial. Under the circumstances of this case, the court finds that counsel's decision not to call the two individuals as witnesses was not constitutionally ineffective.

Ground Four—Failure to Present Expert Testimony

---

[7] The nature of the role playing Defendant engaged in with this woman—i.e., whether it involved discussion of sex with children—is not specified, but the court assumes that is the case, as role playing of other varieties would not necessarily have been relevant.

Defendant next contends that counsel was constitutionally ineffective because he failed to present the testimony of an expert witness that would have supported his theory of defense. Specifically, he asserts that counsel should have presented the testimony of someone who could have confirmed that although many people have fantasies, including fantasies that may appear strange or reprehensible, a "majority" of people with such fantasies never act them out in reality and never want to act them out. Defendant contends that due to the nature of his particular fantasies, it would likely be difficult for the jurors to understand or relate to such fantasies without expert testimony. By way of example he asserts that research shows that many women have rape fantasies, but that these fantasies in no way represent an unrealized wish (doc. 107 at 13, citations omitted). He suggests that, while jurors may not have been able to relate to a sexual fantasy involving children, the jurors would have been able to relate to or better understand the rape fantasy, and by extension would have been more likely to accept Defendant's position that although he participated in fantasy discussion involving children, he had no intent to act out such fantasies (*id*.). Defendant contends that trial counsel was ineffective for failing to research the issue and present such testimony at trial, which would have substantially strengthened his defense.

In his affidavit, counsel indicates that the did not explore that possibility because he did not believe that such an analogy would have been well-received by the jury (doc. 115-1 at 2). Additionally, the Government argues that such testimony would have been inadmissible as irrelevant. In rebuttal, Defendant asserts that in fact the testimony is relevant, although neither party cited any case law pertaining to the relevance of such testimony or its admissibility.

In accordance with the case law cited in the discussion of ground two above, whether Defendant would have actually had sex with a minor had the situation presented itself is not relevant. The Government must prove only "that the defendant intended to cause assent on the part of the minor, not that he 'acted with the specific intent to engage in sexual activity.'" Lee, 603 F.3d at 914 (citing Yost, 479 F.3d at 819 n.3); Murrell, 368 F.3d at 1286. Therefore, expert testimony tending to prove or disprove whether Defendant was likely to follow through on fantasies and actually engage in sexual activity with a minor would not be relevant to the issue of whether he caused assent. *See* Hofus, 598 F.3d at 1178 (excluding expert testimony on the issue of the likelihood of defendant engaging in sexual conduct with the minor); United States v. Hite, No. 12-65, 2013 WL

266521, at *13 (D.D.C. Jan. 24, 2013) (excluding expert testimony regarding the likelihood that a person viewing child pornography would commit a "hands on" offense, because the tendency to actually commit an offense was of marginal relevance and likely to confuse the jury). As the Ninth Circuit explained, testimony that a defendant valued sexual texting with a minor "in fantasy alone," "necessarily implies that [defendant] lacked the intent to *actually* have sex with B.T., but does not make it more likely or not that he attempted to *entice* or *persuade* her to agree to an illegal sex act." Hofus, 598 F.3d at 1179. For this reason, such testimony would likely have confused the jury as to which intent it was required to find Defendant had possessed. *Id.* The same can be said of the proposed testimony in this case. Counsel was not constitutionally ineffective for his failure to present such testimony, and Defendant is not entitled to relief on this ground.

Ground Five—Appellate Counsel's failure to argue error

Defendant next claims that his appellate counsel was constitutionally ineffective because he failed to challenge the district court's decision to allow evidence regarding Defendant's possession of adult pornography (in addition to the child pornography).

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal. Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991). It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also* Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing Smith). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Barnes, 463 U.S. at 751–52. In fact, this is the "hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986). The mere fact that one of the non-appealed issues might have been successful does

not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective. *Id.*; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety).

To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court must examine the merits of the issues the defendant alleges counsel was derelict in not raising on appeal. Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (determining that counsel's decision not to raise a particular argument on appeal, in light of his having raised several important claims, was likely a strategic decision to "winnow out weaker arguments") . Of course, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (citations omitted); *see also* Lambrix v. Singletary, 72 F.3d 1500, 1507 (11th Cir. 1996); United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000). And an informed decision based on reasonable professional judgment not to pursue a particular issue on appeal does not render counsel's performance deficient. *See* Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985) (analyzing Barnes).

Before trial, defense counsel filed a motion in limine in which he sought, among other things, to prohibit the introduction of testimony and evidence regarding the adult pornography found in Defendant's possession, particularly the images depicting bestiality and "golden play" (doc. 42 at 1–2). Defendant argued that such evidence was irrelevant, and to the extent that any marginal relevance existed, the probative value of the evidence would be substantially outweighed by the danger of unfair prejudice (*id.* at 2). The court denied the motion at trial via a written order that was docketed separately and made part of the trial transcript along with Defendant's motion (doc. 57, doc. 90 at 42–53). In its order, the court stated that the images were relevant because Defendant had made passing mention of his "interests" in his conversations with the purported mother of the two girls, and thus his possession of child pornography as well as the adult pornography depicting bestiality and golden play were relevant to the facts at issue and the question of his intent (doc. 57 at 2). The court strictly limited the Government's inquiry to questions aimed at showing that Defendant's representations about his interests to the purported mother were consistent with

pornographic images that he actually possessed (*id.*).  Counsel again objected at the time of the court's ruling (doc. 90 at 42).  The Government's cross examination proceeded as follows:

MR. DAVIS:          Mr. Faris, I'm going to show you Government's Exhibit 1.  At the bottom of this page you identified your interests in this chat.  Can you please read to the jury what you said your interests were?

DEFENDANT:        The last highlighted line?

MR. DAVIS:          That's correct.

DEFENDANT:        Young girls and boys, bestiality, golden play, watching, sharing, that's all erotic.

MR. DAVIS:          What is bestiality?

DEFENDANT:        It's human beings having sex with animals.

MR. DAVIS:          And what is golden play?

DEFENDANT:        People having sex through urination, with urination.

MR. DAVIS:           Now you were interested in those areas, as well, weren't you?

DEFENDANT:        At the time I found them erotically arousing, yes.

MR. DAVIS:          And you had images of pornography containing those images as well, didn't you?

DEFENDANT:        I did.

MR. DAVIS:          In fact, you had numerous images of bestiality; is that correct?

DEFENDANT:        That's correct.

MR. DAVIS:          So you weren't playing a fantasy then, were you?

DEFENDANT:        I'm not sure what you mean.

MR. DAVIS:          Well, it's true you had - -

DEFENDANT:        Of course that's fantasy.  They were photographs.

MR. DAVIS:          It is true you had an interest in bestiality, didn't you?

DEFENDANT:        A fantasy, yes, absolutely.

MR. DAVIS:          And it is true you had an interest in golden play, didn't you?

DEFENDANT:        Absolutely.

(Doc. 90 at 53–54). After this relative brief exchange, questioning then reverted back to the issue of child pornography and sex with children. During re-direct examination, Defendant denied that he ever intended to engage in sex with animals (*id*. at 56).

During closing arguments, the Government mentioned that Defendant "admitted an interest in other forms of sexual conduct which he described to [the jury]" (*id.* at 67). It did not specifically identify or describe those "other forms of sexual conduct." Defense counsel used the evidence about bestiality fantasies to make his point during his closing argument. He noted that "it is sort of a twisted fantasy, but that doesn't mean [Defendant] intended to fulfill that fantasy and have sex with animals" (*id*. at 76). Counsel referenced Defendant's bestiality fantasies again in stating that the jury "could convict" Defendant based on his fantasies, but that a conviction on this basis would be wrong (*id.* at 77), an apparent reminder to the jury not to convict based on its distaste for Defendant's professed fantasy sexual proclivities, but rather on the facts of the case.

Defendant now argues that appellate counsel was constitutionally ineffective because he should have challenged the admission of this evidence regarding Defendant's possession of certain adult pornography on appeal. He offers no new arguments, but states that appellate counsel should have re-argued the issues as presented in trial counsel's motion (doc. 107 at 15–17). He maintains that there is a reasonable probability that but for counsel's error, the result of his appeal would have been different.

Attorney Chet Kaufman, Defendant's appellate counsel, filed an affidavit in response to Defendant's allegations (doc. 115-2). Mr. Kaufman states that he considered raising the issue Defendant now raises herein (*id*. at 1), and he included portions of correspondence he sent to Defendant discussing this issue. Mr. Kaufman's letter states in pertinent part:

> The only other potentially viable [] issue I saw was to challenge the district court's ruling permitting the Government to cross-examine you about your admitted fantasizing about bestiality and golden showers. I have spent a great deal of time considering whether to raise this issue. Mr. Murrell took the position that it was irrelevant. I tend to agree. However, in the overall context of this record, I see no way your conviction would be reversed based on that asserted error. The Government did not mention it in its opening statement. It first came as just one of the many statements in the chats, none of which were objected to. Then defense counsel asked you about it in direct examination, apparently anticipating that the prosecutor would ask about it, and also, I suspect, out of concern that the jury would

want to hear your explanation for having expressed such an interest.[8]  If nothing else, that opened the door for the prosecutor to question you.  The Government's cross-examination did not, in my view, belabor the point to hammer home disturbing inferences that jurors might draw, though that may have been one effect.  The Government did not once mention it in either of its two closing arguments even though it had come into evidence and would have been fair game for comment.[9]  I reviewed the written copy of the chat that jurors were given to consider in their deliberations, and, as you told me, that line was indeed highlighted.  However, so, too, were scores of other lines.  In fact, my rough count showed there were about 120 statements highlighted, so it would be misleading, or contextually inaccurate, for me to represent that the Government highlighted that peculiarly prejudicial evidence over all other legitimately prejudicial evidence.  The Government also agreed to limit is presentation of other prejudicial evidence, such as agreeing not to present the [child pornography] images found on your computer, and agreeing not to mention your possession of adult pornography.[10]  Moreover, evidence of your fantasizing about bestiality and golden showers did not need to work against you, because it was consistent with your defense that you fantasized about bizarre sexual practices without ever intending to act upon them.  Were I to argue the issue on appeal, I would necessarily focus the Court's attention on that prejudicial evidence.  I don't think that would do you any good under the circumstances where, in my view, it would not be found to be reversible error in the face of abundant admissible evidence supporting the Government.  I've also considered what my decision may mean for collateral review.  If the error is not reversible on direct review, it could not, standing alone, satisfy the more harsh standards applicable to a post-judgment motion under 28 U.S.C. § 2255.  Without arguing the issue, I've at least caused the Court to focus on the only issues that, in my professional judgment, are the ones with any realistic chance of bringing you relief now or in the future.

(Doc. 115-2 at 1–2).  Clearly, then, appellate counsel gave this issue weighty consideration before deciding not to raise it on appeal.

---

[8] This statement is inaccurate, as there was no specific mention of bestiality during Defendant's direct testimony.

[9] While there was no specific mention of "bestiality" in the Government's closing, the Government did obliquely reference Defendant's admitted "interest in other forms of sexual conduct which he described to [the jury]" (doc. 90 at 67).

[10] Presumably this statement refers to adult pornography other than that depicting bestiality and golden showers.

The undersigned concludes after a thorough review of the record, that counsel made an informed and reasoned decision based on reasonable professional judgment not to pursue this issue on appeal. Therefore, Defendant has failed to show that his experienced appellate counsel was constitutionally ineffective.

Ground Six—Error in eight-level adjustment pursuant to U.S.S.G. § 2G1.3(b)(5)

Defendant received an eight-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(5) because the (fictitious) minors, who were the subjects of the offense conduct, were under the age of twelve. (PSR ¶¶ 27, 38). He now contends that the reasoning of Amendment 732, that is, that U.S.S.G. § 2G1.3(b)(2)(B) may not be applied to fictitious minors, should also apply to § 2G1.3(b)(5).

Amendment 732 was adopted, in part, to address a circuit conflict regarding application of the undue influence enhancement. Although it specifically applied to the "undue influence" enhancements in §§ 2A3.2(b)(2)(B)(ii) and 2G1.3(b)(2)(B), there was no mention in the amendment of the "under age 12" enhancement in section 2G1.3(b)(5). Thus, there is no authority for such an application or extension. Additionally, the Eleventh Circuit has since rejected this argument in United States v. Carver, 348 F. App'x 449, 451–52 (11th Cir. 2009), *cert. denied* 130 S. Ct. 1552 (2010). In Carver, defendant had expressed his intent to have sex with the eleven-year-old daughter of a man he spoke to in an internet chat room, who was actually an undercover law enforcement officer posing as the father. *Id*. at 451. The court found that the situation precisely on point with the commentary's definition of "minor," and further found that the fact that the "minor" was fictitious had "no bearing on the application of the enhancement." *Id*. at 451–52. Thus, defendant Carver's sentence on this count, to which he had pled guilty, was upheld.[11] A two-level enhancement in a case involving a fictitious minor between 12 and 16 years of age was also upheld in a case involving former § 2G1.1(b)(2)(B) because "the enhancement is directed at the defendant's intent, rather than any actual harm caused to a genuine victim." Murrell, 368 F.3d at 1288–89. There is no authority for the position suggested by Defendant, and there was no error.

Ground Seven—Counsel failed to make a *Helder* argument at trial

---

[11]Defendant's conviction after a bench trial of committing a felony offense involving a minor while being required to register as a sex offender was vacated and remanded because defendant had not properly waived his right to a jury trial. Carver, 348 F. App'x at 452.

Defendant's last contention is that counsel should have made an argument that was accepted by the trial court in United States v. Helder, No. 4:05cr123-DW (W.D. Mo. 2005).  In that case defendant was indicted and charged with a violation of 18 U.S.C. § 2422(b).  At trial, defendant presented no evidence and moved for a judgment of acquittal, arguing that the government's case failed for "legal impossibility" because § 2422(b) required that the targeted victim be an actual minor.  *See* United States v. Helder, 452 F.3d 751, 753 (8th Cir. 2006).  The jury had found defendant guilty as charged, but the trial court set aside the jury's verdict and granted the motion for judgment of acquittal, holding that the plain reading of § 2422(b) requires the government to prove that the individual involved in the communication was under the age of 18, and a conviction under the circumstances of that case was a legal impossibility.  *Id.*; *see also* United States v. Helder, No. 4:05cr123-DW (W.D. Mo. 2005), doc. 40.  Defendant in this case acknowledges that the trial court's order was overturned by the Eighth Circuit on appeal and that no other court appears to have taken this position, but he argues that counsel should have made this argument nonetheless.  As noted by the Government, one of the cases relied upon by the Eighth Circuit was the Eleventh Circuit's opinion in United States v. Root, in which the court held that a defendant can be convicted of a section § 2422(b) offense when the victim is fictitious.  296 F.3d 1222, 1227–29 (11th Cir. 2002); *see also* United States v. Farley, 607 F.3d 1294, 1309 (11th Cir. 2010).  Counsel is not ineffective for failing to raise a non-meritorious claim, *see* Freeman; Brownlee; *supra*, and Defendant is not entitled to relief.

Defendant also argues that trial counsel was ineffective for failing to object to the jury instructions, and that had such an argument been made, either this court "would have agreed with [the Missouri district court judge in Helder] or the issue would have been preserved and the Eleventh Circuit or the Supreme Court would have adopted" that analysis (doc. 107 at 22).  Defendant admits that Root is contrary, binding precedent; thus, again, Defendant is not entitled to relief.

Finally, Defendant argues that trial counsel should have moved for a judgment of acquittal on the basis that the Government failed to prove that he took a substantial step "to engage in sexual activity with a minor" (*see* doc. 107 at 22; doc. 123 at 10).  The Government did not address this portion of Defendant's argument.  However, as noted in the case law cited above, this is not a necessary part of the Government's proof; the Government need only prove that Defendant took a

substantial step toward inducing a minor to engage in sexual acts. *See also* <u>Lee</u>, 603 F.3d at 914 (Government must prove that a defendant took a "substantial step toward causing assent, not toward causing actual sexual contact"); <u>Bailey</u>, 228 F.2d at 639 (in 18 U.S.C. § 2422(b), Congress criminalized persuasion and the attempt to persuade, not the performance of the sexual acts themselves). The Government met its burden in this regard, and counsel was not constitutionally ineffective for failing to move for a judgment of acquittal. *See e.g.,* <u>Murrell</u>, 368 F.3d at 1287 (incriminating statements to undercover law enforcement officer posing as minor's father, traveling to meet the minor, carrying a gift, money and condoms unequivocally demonstrated his intent to influence a young girl into engaging in sexual activity).

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (doc. 106) be **GRANTED** with respect to ground one such that the district court can reconsider Defendant's sentence under the adjusted advisory guidelines range, and **DENIED** as to the remaining grounds for relief.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>29</u><sup>th</sup> day of May 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).